### J. A. LEONARD *v.* THE STATE.

1. EMBEZZLEMENT. — INDICTMENT for embezzlement need not allege that the embezzled property was taken with the intent to deprive the owner of it or its value, and appropriate it to the taker's benefit.

2. SAME. — Indictment for embezzlement described the owner as "the First National Bank of Fort Worth, an incorporated company, then and there duly and legally established, organized, and existing under and by virtue of the laws of the United States, as an incorporated company." *Held*, a sufficient description and designation of the owner.

3. VARIANCE. — In support of the allegation that certain cotton was the property of "the First National Bank of Fort Worth," the court below admitted certain receipts therefor made by the defendant, which designated the owner as "1st Nat. Bank," and allowed the State to prove by a wit-

ness that these latter words meant and were intended to mean the First National Bank of Fort Worth. *Held*, that the testimony was admissible, and obviated the objection of variance between the allegation in the indictment and the designation in the receipts.

4. EVIDENCE. — In the trial of an alleged bailee for embezzlement of his bailor's property, it was competent for the State to prove the terms of the contract of bailment, by virtue of which the property went into the defendant's possession.

5. SAME. — At the trial of the keeper of a cotton-yard for embezzling twenty bales belonging to a certain bank, it was in proof for the defence that he absconded, leaving a much larger number of bales in his yard, which belonged to different owners; and the court below allowed the State to prove by owners of such cotton the number of bales they had in the yard, and how many they recovered therefrom after the flight of the defendant. *Held*, that the testimony was competent in connection with the antecedent evidence, and to show that the cotton left on hand by the defendant did not comprise the twenty bales mentioned in the indictment.

6. BURDEN OF PROOF — CHARGE OF THE COURT. — With reference to such proof, the court below instructed the jury that "when facts have been proved which constitute the offence, it devolves on the accused to establish the facts and circumstances on which he relies to excuse or justify the prohibited act or omission." *Held*, in view of the proof referred to, and of the charge as an entirety, that the instruction, even if unnecessary, was not error.

7. OWNERSHIP. — In a prosecution for embezzlement, it suffices to prove a qualified ownership in the alleged owner of the property appropriated by the defendant, and that such owner had the right to the possession and control of it.

8. SAME — ULTRA VIRES. — In defence to an indictment for embezzlement of cotton alleged to belong to a national bank, it is urged that the national-banking law disables such banks from owning personal property or taking mortgages or liens thereon, and therefore the alleged ownership was an impossibility, incapable of proof. But *held*, that the doctrine of *ultra vires* cannot thus avail as a defence in cases of theft, embezzlement, and the like.

#### ON MOTION FOR REHEARING.

1. EMBEZZLEMENT. — The statutory offence of embezzlement originated in a necessity which resulted from the inapplicability of the common law of larceny to breaches of trust by persons occupying fiduciary relations. All authorities treat it as akin to larceny, and the Code of this State affixes the same penalty to it and to that offence. Concisely defined, it is the fraudulent appropriation of another's personal property by one to whom it had been intrusted.

2. SAME — CONVERSION. — The fraudulent conversion may be consummated in any manner capable of effecting it; and its commission is a question of fact, and not of pleading, when the indictment charges that the defendant did embezzle, fraudulently misapply, and convert to his own use the property entrusted to him.

3. SAME. — Conversion of a bailment by a bailee may be effected by a sale, whether he was or was not authorized to sell it; but if he was authorized to sell it, and did sell it with the then intention to pay over the proceeds to the bailor, but afterwards conceived the fraudulent purpose and converted the proceeds to his own use, he is not guilty of embezzlement of the property so sold. *Per contra,* notwithstanding his authority to sell, if he made the sale as a means of converting the property to his own use, and did so convert it, his offence is embezzlement.

4. ALLEGATA ET PROBATA. — Indictment alleged that the defendant was a bailee of certain cotton "for hire, to wit, for the sum of fifty cents per bale;" and the State adduced his receipts, which showed that such was his charge. He introduced testimony that in fact his charge was only thirty-five cents per bale, and that his receipts were intended to deceive his competitors as to his charge. *Held,* that the material allegation was that he was a bailee for hire, and not the exact rate of his charges; and that, besides other satisfactory evidence, his receipts were conclusive against him in proof of the allegation.

5. DEMAND. — To constitute embezzlement, it is not necessary that a demand was made on the defendant for the property intrusted to him; nor could one be expected when he absconded without notice and left no agent amenable to a demand. The fraudulent conversion may be inferred from facts; and flight, concealment, and evasion are strong evidences of the fraud.

6. INTERPRETATION OF THE CODES. — The Code of Criminal Procedure provides that "a defendant in a criminal case is presumed to be innocent until his guilt is established by legal evidence, and, in case of reasonable doubt as to his guilt, he is entitled to be acquitted" (Rev. Code Cr. Proc., art. 727); and the Penal Code provides that, "on the trial of any criminal action, when the facts have been proved which constitute the offence, it devolves upon the accused to establish the facts and circumstances on which he relies to excuse or justify the prohibited act or omission" (Rev. Penal Code, art. 51). *Held,* that there is no inconsistency between these provisions, nor in the many decisions wherein they have been construed. Note the commentary on them in the opinion, and the reference to the leading but unreported case of *Hall* v. *The State.*

7. SAME — CHARGE OF THE COURT. — When, as in the present case, all exculpatory evidence, if any existed, was peculiarly accessible to the defendant, it was proper and requisite to give in charge to the jury the provision of the Penal Code above quoted; and, in view of the evidence, the instruction did not shift the burden of proof from the State to the defendant.

APPEAL from the District Court of Tarrant. Tried below before the Hon. A. J. HOOD.

The *gravamen* of the indictment is set out in the opinion originally rendered in this well-contested and instructive

case; and in that and the opinion delivered on the motion for a rehearing the leading facts underlying the rulings are indicated. The most material of the testimony, however, may be useful.

M. B. Loyd, for the State, testified that ever since the organization of the First National Bank of Fort Worth, as authorized by virtue of the certificate of the United States comptroller of the currency, dated March 21, 1877, and which he identified, he had been the president and C. H. Higbee the cashier of the bank, and they had transacted about all its business. On December 1, 1877, Joseph A. Leonard, the defendant, was, and for some months previous had been, engaged in the business of keeping a cotton-yard in the city of Fort Worth, and the said bank had some cotton transactions with him. A number of receipts, partly in print and partly in writing, were identified by the witness as cotton-receipts held by said bank for cotton stored in the defendant's yard. The bank held the cotton by virtue of these receipts, having paid the money, for the cotton represented by them, to any party who presented a check from Leatherwood, a cotton-buyer, with the defendant's storage-receipt attached to the check. The bank did not buy any cotton, nor was any cotton delivered to the defendant by it or its officers. It was only by the receipts that the witness could identify the cotton mentioned in the indictment, and only by the balance due the bank from Leatherwood (a buyer who operated in connection with the defendant) that he knew the deficit of the defendant in the amount of cotton represented by the receipts.

J. D. Jeffries, for the State, testified that he was the defendant's book-keeper and cashier from August, 1877, to December of the same year, the time of the "break-up," when the defendant left. The cotton-receipts shown to the previous witness were identified by this witness as the receipts of the defendant, whose signatures were signed by witness to them and to the indorsements thereon, with the

knowledge and by order of the defendant.   Each of these receipts represented a bale of cotton of the description and weight set forth in the receipt ; and the cotton so represented was received in the defendant's yard at the date of the corresponding receipt.   Whoever held the receipt had a right to the bale of cotton it represented.   The indorsement on each of these receipts, viz. : "Held subject to the order of 1st Nat. Bank upon return of this receipt," was not put on the defendant's receipts in general, but only on those for which the bank paid the money ; and the words, " 1st Nat. Bank," mean " the First National Bank of Fort Worth."   What became of the cotton represented by these receipts held by the bank the witness did not know. Leatherwood and three others were buying cotton for the defendant.   On December 1, 1877, the defendant left, and his cotton-yard closed.   Witness did not know where the defendant went to, and saw him no more until the fall of 1878.   Just before he left, he sold to G. T. Potter, by classification, about one hundred bales in marks not known to witness.   There was on the yard, when the defendant left, some cotton marked BOB (in which mark eight of the missing bales appear by the receipt) ; and Potter's cotton was on the yard when defendant left, but whether the latter included the former, the witness does not state ; nor could he say whether any of the receipts identified as the bank's were returned, or that the corresponding cotton had ever been delivered to any one.   Witness never knew of any cotton being delivered from the yard without a return of the receipts ; and no order from the bank about the cotton represented by the receipts it held was received by him, or, so far as he knew, by the defendant.   The fifty cents charge noted in the receipts was for storage, but the real charge made was thirty-five cents ; the fifty cents was put in the receipts to show to other cotton-yard keepers. The charges had to be paid when the cotton was taken out of the yard.   Defendant and Leatherwood agreed to buy

cotton and divide the profits; the defendant gave Leatherwood $1,000 to put up as a margin, and Leatherwood made an arrangement with the First National Bank to pay the checks, Leatherwood paying the storage. Including the cotton sold to Potter, there were more than one hundred and fifty bales on the yard when the defendant left.

In connection with this testimony the State put in evidence the receipts held by the bank, each of which bore the signature of the defendant, and purported the delivery to him on a certain day, by W. S. Leatherwood (except two by A. G. Wood), of one bale of cotton, in a designated mark, and of a stated weight and number; which bale, by stipulation on the margin, was "to be delivered on return of this receipt." Each receipt bore, over the defendant's signature, the indorsement, "Held subject to order of 1st Nat. Bank on return of this receipt."

John Nichols, president of the City National Bank of Fort Worth, testifying for the prosecution, stated that on December 1, 1877, the defendant owed that bank $2,335 for advances on cotton, and witness told him it must be settled. On that day the defendant and G. T. Potter came to the bank, and the latter checked on it for $5,000 in favor of the defendant; and the bank, on cashing the check, deducted from its amount the indebtedness of the defendant and paid him the balance. The check was given by Potter for cotton sold him by the defendant; and the latter, on receiving the balance paid him by the bank, absconded, and was afterwards brought back in arrest. The bank, on thus collecting its dues from the defendant, at his request transferred to Potter the cotton-receipts it held for the amount which the defendant had been indebted to it.

M. B. Loyd, recalled by the State, testified that the defendant, when he left the country, was short to the First National Bank of Fort Worth not less than ten bales of cotton, represented by the receipts in evidence, and worth at least $40 per bale. The indorsement on the receipts

was put there in accordance with an arrangement between the bank and the defendant, and in order to hold him directly responsible to the bank for the safe-keeping of the cotton. Witness never authorized him to dispose of the cotton in any manner. The bank had no other connection with him except as a warehouseman; and he never accounted to the bank for the cotton represented by the receipts in evidence. On cross-examination, the witness stated that the cotton-buyer would check on the bank for the price of the cotton, attaching to his check the receipt of the defendant, showing that the cotton was in his yard. Leatherwood, whose name appears in most of the receipts, put with the bank a margin of $1,000 to secure it against loss by a fall in the cotton-market. The bank paid the money to those from whom he bought the cotton, and held it as collateral security, paying no storage on it. Witness, when he heard that the defendant had absconded, took the receipts to the cotton-yard, and had a man to examine the cotton still there for any of the Leatherwood cotton, and only five or seven bales of it were found, and they were reclaimed for the bank. Some weeks before the defendant left, he brought $2,000 to the bank, and with it took up Leatherwood's receipts to that amount. Witness supposed the defendant got the money by selling the cotton. Both the defendant and Leatherwood were requested by witness to find a purchaser for the cotton represented by the receipts held by the bank; but witness did not remember telling Jeffries that he (the witness) wanted the defendant to sell the cotton.

J. M. Henderson, sheriff of Tarrant County, testifying for the prosecution, stated that about December 1, 1877, he made diligent search in that county for the defendant, and failed to find him. In July, 1878, witness arrested the defendant in San Antonio, where he was passing under the name of W. L. Smith.

C. H. Higbee, cashier of the First National Bank of

Fort Worth, testified for the State. His evidence is, in substance, included in that of Mr. Loyd.

By J. Samuels and A. Mandlebaum the State proved that when the defendant absconded they went to his cotton-yard to get cotton for which they held his receipts. Samuels got none of the eleven bales to which his firm was entitled; Mandlebaum got sixteen out of fifty-one, and left no cotton on the yard.

For the defence, J. S. Jeffries testified that he was employed by defendant to receive and weigh the cotton stored in the latter's yard, from August 1, 1877, to December 1 of the same year. Neither the First National Bank of Fort Worth, nor any of its officers, ever delivered any cotton there. On the last Tuesday of November, 1877, Mr. Loyd, president of the said bank, came to the yard, and told Leatherwood and the defendant that he wanted them to sell the cotton and close up Leatherwood's account. The next day Loyd came again, and told witness to tell the defendant that he (Loyd) wanted the cotton sold and the Leatherwood account closed; and witness told the defendant what Loyd said. Mr. Higbee, the cashier, came down the same week, and said he wanted them to sell the cotton. The Leatherwood cotton was bought by Leatherwood, and came to the yard as his cotton. He and the defendant had an agreement that they would put up $1,000 as a margin, and Leatherwood was to buy cotton and store it in defendant's yard, and they were to divide profits. Defendant was to control and sell the cotton. On December 1, when the defendant left, there were over one hundred and eighty bales on the yard; of which Potter took one hundred and nineteen, Mordecai thirty or forty, Mandlebaum & Etheridge sixteen, Forsythe two or three, and Gibbons some. There was considerable excitement, and witness could not control the cotton. The last that witness saw of the defendant, the latter was going to the City National Bank. Neither witness nor his family, though defendant was his

son-in-law, knew where he went to when he left. On his cross-examination, the witness recognized the receipts in evidence, and verified the weights and description of the bales mentioned therein. The defendant knew of the receipt of those bales, and the receipts were signed with his name by his authority, The indorsements were put on the receipts by the defendant's order. Whoever held one of the receipts, and came by it honestly, owned the cotton described in it. Witness did not pretend to say that all the cotton described in the receipts was on the yard when the defendant left, but there was some of the Leatherwood cotton there.

J. D. Jeffries, for the defence, stated that the sale by the defendant to Potter was for one hundred bales, and that the Leatherwood cotton was delivered at the yard by Leatherwood, and not by the First National Bank of Fort Worth.

M. B. Loyd, recalled by the State in rebuttal, denied that he ever authorized the defendant to sell the cotton described in the receipts held by the bank, but only authorized him to negotiate a sale or find a purchaser for it; nor did he remember sending word to the defendant, by J. S. Jeffries, to sell it.

The record contains seven bills of exception, covering ten pages, reserved by the defence; but they, and all other matters immediately involved in the rulings made, are sufficiently noticed in the opinions. The jury found the defendant guilty, and assessed his punishment at five years in the penitentiary.

*R. E. Cowart* and *Hughes & Watts*, for the appellant. The court erred in overruling the defendant's motion to quash the indictment, for the several grounds and reasons shown by said motion. For it was not charged in said indictment that said First National Bank of Fort Worth carried on or did business as such in Tarrant County, State of Texas, or elsewhere in said State; which is a necessary averment.

The charge in the indictment is, "that the First National Bank of Fort Worth, an incorporated company, then and there duly and legally established, organized, and existing under and by virtue of the laws of the United States as an incorporated company," etc. See *Corley* v. *The State*, 54 Ga. —, and authorities there cited; *Coats* v. *The People*, 22 N. Y. 245.

For that it is not charged in said indictment that any demand was ever made upon appellant to deliver said cotton to said bank, nor is it therein shown why such demand was not made; all of which is necessary and requisite.

There is no demand for the cotton shown in the indictment, or any refusal to deliver upon the part of the defendant. *The State* v. *West*, 10 Texas, 554; *Wright* v. *The People*, 61 Ill. 382; 2 Green's Cr. Rep. 558.

For that it is charged in said indictment, in substance, that said cotton came first into the possession of said bank, and was by said bank intrusted to appellant; whereas the law is that, to constitute embezzlement, the property must go into the possession of the bailee from some other person than the bailor. 2 Bishop's Cr. Law, sects. 352, 357; Whart. Cr. Law, sect. 1941.

Said indictment charges that said " First National Bank of Fort Worth " was a corporation existing under and by virtue of the laws of the United States, and that said cotton was funds of said bank, and that appellant was an agent of said bank; and therefore said offence charged against appellant was cognizable alone by the courts of the United States, and not by the courts of the State of Texas. See Rev. Stats. U. S. 1013, sect. 5209; 1 Whart. Cr. Law (7th ed.), sects. 184, 194; *The Commonwealth* v. *Tenney*, 97 Mass. 56; *The Commonwealth* v. *Felton*, 101 Mass. 204; *The People* v. *Kelley*, 38 Cal. 145; *The State* v. *Adams*, 4 Blackf. 146; *The State* v. *Pike*, 15 N. H. 83.

National banks cannot own or deal in cotton, nor hold the same as collateral security; and the contract of bailment

charged in said indictment is *ultra vires*, and therefore void. See Rev. Stats. U. S., sect. 5136, par. 7 ; Green's Brice's Ultra Vires, 623, 625, note ; *Weckler* v. *First National Bank of Hagerstown*, 42 Md. 581 ; *Fowler* v. *Sculley*, 72 Pa. St. 456 ; *National Bank of Lyons* v. *Ocean National Bank*, 60 N. Y. 278.

The State, over objection of appellant, was allowed to introduce as evidence the certificate of the comptroller of currency, and also proof of independent and other purported acts of embezzlement. This was error. See Rev. Stats. 332, 335, chap. 4, tit. 38 ; *The Commonwealth* v. *Shepherd*, 1 Allen, 575.

The court erred in refusing to give the charges asked by the defendant ; for if the title and ownership of the cotton was not in " the First National Bank of Fort Worth " at the time it was charged to have been converted by defendant, then he could not be legally convicted under the indictment, which charges that the title and ownership was in said bank at the time. Again, if the bank only held the cotton as collateral security, then if the defendant sold the same he was not guilty of embezzlement, but might have been guilty of fraudulently selling personal property subject to a lien. And again, if the defendant was authorized to sell the cotton by the bank, and he did sell the same, and converted the money arising from such sales to his own use, then he was not guilty of embezzling the cotton.

The evidence showed that the title and ownership of the cotton was not in the bank, but that it was owned by appellant and Leatherwood ; that the bank claimed to hold said receipts and cotton as collateral security. Therefore appellant asked the court to charge the jury that if the said bank held said cotton as collateral security, or that the title and ownership of said cotton was not in said bank at the time the same is charged to have been embezzled, then for the jury to acquit. This charge was refused by the court. See Gen. Laws 1876, p. 9 ; *Griffin* v. *The State*, 4 Texas

Ct. App. 390; *The State* v. *Kent*, 21 Am. Rep. 764, 767; 22 Me. 41.

If the bank was not the owner of this cotton, but held said receipts and claimed said cotton as collateral security, and the defendant sold the cotton and converted the proceeds to his own use, he is not guilty of embezzlement, but might, upon proper proof, have been guilty of selling personal property subject to a lien. See Gen. Laws 1876, p. 9; Penal Code, art. 797; *The State* v. *Kent*, 21 Am. Rep. 764, 765; Rev. Stats. U. S., sect. 5136.

If the defendant was authorized by the bank to sell the cotton, and did sell the same and convert the money arising therefrom to his own use, he is not guilty of embezzling the cotton. Gen. Laws 1876, p. 9; *Baker* v. *The State*, 6 Texas Ct. App. 346.

The court erred in the charge to the jury in this: that the court tells the jury that when the facts have been proven which constitute the offence, it devolves upon the accused to establish the facts and circumstances on which he relies to excuse or justify the prohibited act or omission; for that the court, in giving such charge, assumes that the facts constituting the offence charged in the case had been proven; and in giving said charge the court led the jury to believe that the court thought the defendant's guilt was established. And again, the court, by said charge, changed the burden of proof from the State to the defendant, and otherwise misled the jury; and also thereby deprived the defendant of the benefit of the reasonable doubt upon all the evidence introduced upon the trial of the cause.

The appellant entered the plea of not guilty, and did not admit any thing; testimony was introduced both by the State and the appellant; in fact, the latter contested every proposition relied upon by the State to secure a conviction, as will appear from the record. Notwithstanding, the court, immediately after giving charge upon the presumption of innocence and reasonable doubt, followed the same with

said charge. Code Cr. Proc., art. 727; *Shanks* v. *The State*, 25 Texas (Supp.), 340; *Dorsey* v. *The State*, 34 Texas, 651; *Delany* v. *The State*, 41 Texas, 601; *Walker* v. *The State*, 42 Texas, 340; *Hall* v. *The State*, Galveston term, 1875; *Perry* v. *The State*, 44 Texas, 478; *Chapman* v. *The State*, 1 Texas Ct. App. 728; *Chaffee* v. *United States*, 18 Wall. 516; 1 Whart. Cr. Law, 707; *The State* v. *Wing*, 27 Am. Rep. 329, and the authorities there cited.

The court erred in its charge in this: that the court in effect tells the jury that if the cotton was in store, and in the care of the defendant Leonard, and the owner of the cotton transferred to the bank Leonard's receipt as cotton-yard keeper, as and for collateral security, and that this transfer was made with the sanction of the defendant, then that the defendant instantly became the bailee of the bank, and might be indicted and convicted as such for the embezzlement of the cotton, etc.

It was charged in the indictment that the said cotton was the corporeal personal property of said bank. The proof showed that the bank held the receipt of appellant for said cotton as collateral security, and the proof showed that the bank never paid appellant one cent for keeping the cotton, and never agreed to pay him one cent therefor. Gen. Laws 1875, p. 9; *Perkins* v. *Sterne*, 23 Texas, 563, and authorities cited; *Griffin* v. *The State*, 4 Texas Ct. App. 390; *Robinson* v. *The State*, 5 Texas Ct. App. 220; Tyler on Usury, 508 *et seq.; Gen. Laws 1874, p. 153; *Lucketts* v. *Townsend*, 3 Texas, 131; *Warrington* v. *The State*, 1 Texas Ct. App. 168.

The court erred in charging the jury, " that if the defendant sold the cotton by authority of the bank, *without a fraudulent intent*, he could not be convicted." The same is misleading and erroneous in this: that it makes the *intent material*, when the law is that if the defendant sold the cotton under the authority of the bank, regardless of his intent he could not be convicted for embezzling the cotton,

but might probably have been guilty of embezzling the proceeds of the cotton, or the theft thereof.

There was evidence tending to show that the bank officers had authorized and requested the defendant to sell said cotton. Upon this the court gave the said charge. Gen. Laws 1876, p. 9; Penal Code, art. 727; *Griffin* v. *The State*, 4 Texas Ct. App. 390; *Robinson* v. *The State*, 5 Texas Ct. App. 520; *Baker* v. *The State*, 6 Texas Ct. App. 344.

*Thomas Ball*, Assistant Attorney-General, for the State. 1. The case of *Coats* v. *The People*, 22 N. Y. 245, cited by the appellant on the sufficiency of the indictment, turned on the word "private" which precedes the words "persons or corporations" in the statute of that State, which in this respect differs greatly from the law of this State. Penal Code, arts. 786, 787; Acts 1876, p. 9. Upon the sufficiency of the indictment, see *Wise* v. *The State*, 41 Texas, 139.

A fraudulent conversion to the defendant's own use is embezzlement, whether a demand was made or not; and therefore a demand need neither be averred nor proved. *The Commonwealth* v. *Hussey*, 111 Mass. 432; *The Commonwealth* v. *Tuckerman*, 10 Gray, 173.

It makes no difference from whose possession the bailee received the property alleged to have been embezzled. 2 Bishop's Cr. Law, sect. 372; *Henderson* v. *The State*, 1 Texas Ct. App. 432; *Baker* v. *The State*, 6 Texas Ct. App. 344.

While it may be true that the United States courts have jurisdiction to try a person prosecuted for embezzlement from a national bank, yet the same act is an offence against the Penal Code of Texas; and the State courts have jurisdiction of an offence against the State laws, although it be embezzlement from a national bank. *The Commonwealth* v. *Barry*, 116 Mass. 1; *The State* v. *Fuller*, 34 Conn. 280; *The State* v. *Haskell*, 33 Me. 127.

Whether national banks can hold personal or even real property, or can hold the same as collateral security, are questions which cannot arise in this case, but questions over which the authority which created those corporations has complete control and jurisdiction. If a bank were to violate its charter, it might be sufficient for the proper authority to take away its charter; but even then the rights it has acquired, either directly or collaterally, cannot be inquired into in a proceeding of this kind.

2. The general charge of the court below is sufficient as to the ownership of the bank in the cotton, and its refusal to give the charge asked by the defendant was clearly right. That special charge is clearly against the law, in the part which says " that, if the bank held the cotton as collateral security, then if the defendant sold the same he was not guilty of embezzlement." Whether the bank held the cotton absolutely in its own right, or in a right collateral to some other right of property, so that it had a qualified property in the cotton, it is sufficient to sustain the prosesution. *The Commonwealth* v. *Buttrick*, 100 Mass. 1. And see *Riley* v. *The State*, 32 Texas, 763, though overruled by *Griffin* v. *The State*, 4 Texas Ct. App. 412, in so far as it holds that an indictment for embezzlement will support a conviction on proof of theft.

The remainder of the charge asked by the defendant was in substance given in the main charge, and therefore its refusal was not prejudicial to any of the defendant's rights. While the part of the charge complained of might, if isolated and alone, have been error, yet if the remainder of the charge, coupled with the objectionable part, left to the jury the right to consider the degree of weight to be attached to the facts referred to in the charge, and no exception was taken to the charge at the time, it is not material error when it was not calculated to injure the rights of the defendant. *Parrish* v. *The State*, 45 Texas, 51.

In a case such as this at bar, when the act is proved which

constitutes the offence, and nothing in the State's evidence shows that the defendant had the right to use the cotton, the offence is complete and well made out, and it devolves on the defendant to show by evidence his right to use it, inasmuch as he is presumed to know best the reason why he used the property of another. The instruction in the present case, therefore, was not objectionable when taken in connection with the entire charge. This case is very different from *Delany* v. *The State*, 41 Texas, 601, where the instruction here objected to was held error. If, at the time the defendant appropriated or used the cotton, he intended and had the means to make it good, it was embezzlement. *The Commonwealth* v. *Tuckerman*, 10 Gray, 173; *The Commonwealth* v. *Mason*, 105 Mass. 163. Applying the rule thus laid down in these cases to the instruction so much objected to by the appellant, there is no error; because the proof of the bare fact of conversion without the owner's consent made out a clear case of embezzlement, and the charge could not and did not operate to the defendant's injury.

No exception to the charge of the court is presented by bill of exceptions, as required by law. The refusal to give a requested charge does not operate as a bill of exceptions; and this court should not review or in any way examine the charge of the court, as there is nothing before this court to show that the defendant was in any respect dissatisfied with the charge when it was given. Pasc. Dig., art. 3068; Code Cr. Proc., art. 686; *Robinson* v. *The State*, 24 Texas, 154; *Scott* v. *The State*, 25 Texas (Supp.), 168; *Williams* v. *The State*, 41 Texas, 209.

Unless the statute expressly authorized a defendant to have the charge reviewed on appeal, without bills of exception, the court will not review it; for, in the absence of a statute prescribing the mode of procedure, the common-law rule controls, and under it no charge of the court was reviewed on appeal unless the defect was pointed out by bill of exceptions. Code Cr. Proc., art. 27.

The object of the requirement that judges shall give their charges in writing, and sign them, is not to substitute the written charge for a bill of exceptions, but to authenticate the charge so as to compel the judge to sign a bill of exceptions taken to any portion of it.

As to the exception taken to the admission in evidence of the certificate of the United States comptroller of the currency, over objection by the defendant, the court below committed no error; for the courts take judicial notice of the national seal of another nation. 1 Greenl. on Ev., sect. 6. And as the acts of Congress are law of the land, there was no necessity to introduce them in evidence. But suppose the certificate was improperly admitted, no wrong was done the defendant; because, without objection on his part, the existence of the First National Bank of Fort Worth had already been shown by parol, and that was sufficient. *The People* v. *Barric*, 49 Cal. 342.

With reference to the other exceptions reserved to the rulings on the evidence, it need only be remarked that the other acts of embezzlement were correctly admitted for the purpose of showing the guilty motive of the defendant in the commission of the act for which he was being prosecuted. 1 Allen, 575; 10 Gray, 173; *Dill* v. *The State*, 1 Texas Ct. App. 278; *Street* v. *The State*, *ante*, p. 5.

WINKLER, J. This appeal is from a verdict and judgment of conviction on a charge of embezzlement of twenty bales of cotton alleged to belong to the First National Bank of Fort Worth, which, the indictment avers, were placed in the possession of the appellant as bailee, the appellant being the keeper of a cotton-yard in the city of Fort Worth, Tarrant County.

The principal grounds relied on for reversal of the judgment are: *first*, the insufficiency of the indictment; *second*, alleged error in admitting testimony against the defendant on the trial below, over his objections, and to the admission

of which bills of exceptions were saved by the defendant's counsel; *third*, supposed error in the refusal of the court to give to the jury certain special instructions asked by the defendant's counsel; *fourth*, supposed error in the general charge of the court; *fifth*, the refusal of the court below to grant the defendant a new trial.

The grounds of the motion to quash the indictment may be condensed into the following: That the indictment does not state that the cotton was ever ordered by the owner thereof to be returned to the owner, or that the receipt of the defendant was ever returned to the defendant, or that any demand was ever made of said cotton, or any payment was ever made, or tender of the yard-keeper's fees, or any reason given for not having done so; that it is not alleged that the defendant ever received the cotton as bailee of the owner; that the cotton-yard keeper is not such bailee in contemplation of law; and it is not alleged that the cotton was embezzled with a fraudulent intent to deprive the owner of the cotton of its value, or to appropriate it to the benefit of the defendant; that there is no sufficient description of the cotton, nor is the character of the bailment sufficiently averred, nor is the act of conversion sufficiently described; because it is alleged that the defendant was part owner of the cotton; that the indictment charges no offence against the law; and because the bank is a foreign corporation, and the indictment does not allege that it does business in Texas by authority of the laws of the State.

In order to see the applicability of the exceptions to the indictment, we set out so much of it as is necessary for that purpose. The indictment charges: "That the 'First National Bank of Fort Worth,' an incorporated company then and there duly and legally established, organized, and existing under and by virtue of the laws of the United States as an incorporated company, did, on the first day of December, A. D. 1877, deliver and intrust to the care and possession of, for storage and safe-keeping, to one Joseph

Leonard, the said Leonard being then and there the keeper of a cotton-yard, and doing business as the keeper and bailee of cotton for storage for hire, twenty bales of lint cotton, of the value of fifty dollars per bale, being then and there corporeal personal property of the ' First National Bank of Fort Worth,' to be stored and kept safely by the said Leonard for hire, to wit, for the sum of fifty cents per bale, and to be held by said Leonard subject to the order of the ' First National Bank of Fort Worth,' on the return of the said Leonard's receipts for the same, and that the said Joseph Leonard did, by virtue of his said employment of cotton-yard keeper and bailee, and while he was so employed as aforesaid, take into his possession said twenty bales of cotton, to be held and kept as aforesaid, and that the said Joseph Leonard, cotton-yard keeper and bailee as aforesaid, afterwards, to wit, on the second day of December in the year of our Lord one thousand eight hundred and seventy-seven, in said county and State, and before said cotton so delivered to him as aforesaid was by the said the ' First National Bank of Fort Worth' ordered to be delivered to any one, or returned to said bank, and before said cotton was by said bank ordered to be disposed of in any manner, did embezzle, fraudulently misapply, and convert to his own use, without the consent of the said the ' First National Bank of Fort Worth,' the said twenty bales of lint cotton held by him as bailee as aforesaid ; contrary to the statute and against,'' etc.

It will readily appear from the face of the indictment that it contradicts many of the objections taken to it by the defendant. It is no part of the description of the offence of embezzlement that the indictment should allege, as in theft, that it was taken with the intent to deprive the owner of the property or its value, and to appropriate it to the benefit of the taker. The indictment alleges the property to have been in the possession of the defendant, which would to some extent excuse the pleader from a

more minute description; still we are of opinion it was sufficiently described for the purposes of this prosecution, to apprise the defendant as to what he was charged with.

With regard to the objection to the description of the bank, we are of opinion it was not well taken. In *Price* v. *The State*, 41 Texas, 215, where the defendant was indicted for theft of a bale of cotton, it was objected that the proper name of the owner, the H. & T. C. R. W. Company, was not properly set out. The court say: "It was not necessary to set out the charter in the indictment, or to allege it to be a chartered company otherwise than by name." Citing Archb. Cr. Pr. & Pl. 271, note; *The People* v. *Curling*, 1 Johns. 320. In the present case, more was set out in the indictment than was required agreeably to Price's case. We do not feel called on to determine what it would be necessary for an indictment to charge in prosecutions before the United States courts, under the general banking law of the United States. The question with us is what would be sufficient in an indictment for embezzlement under the laws of this State. The indictment in *Wise* v. *The State*, 41 Texas, 139, which was held good by the Supreme Court, was not more specific in some of the particulars here complained of than the indictment before us; but, without pressing this inquiry further, we are of opinion that the indictment sets out the offence with which the appellant is charged in plain and intelligible language, and is sufficient to support the verdict and judgment; and that there was no error in overruling the motion to quash it.

With reference to the alleged error in admitting testimony over objection, the first bill of exceptions shows that the prosecution was permitted to prove, over objection, by a certificate of the United States comptroller of the currency, that the "First National Bank of Fort Worth" was authorized to do a banking business under sect. 5169 of the Revised Statutes of the United States. We are of

opinion the testimony was admissible; still, if it was unnecessary to set out the act of incorporation, as was said in *Price* v. *The State*, it was only necessary to prove the name of the corporation. Yet, however this may be, the prosecution proved on the trial, by written testimony, the organization, name, and locality of the bank, and without apparent objection; and the objection to the admission of the comptroller's certificate became immaterial.

The matter mentioned in the second bill of exceptions is about this: The prosecution offered in evidence certain cotton-receipts which recited that the cotton mentioned in the receipts was " held subject to order of First National Bank on return of this receipt," which were objected to because the receipts varied from the allegations in the indictment, and because they showed that the cotton was received from another and not from the bank. This objection applied to all the cotton-receipts offered in evidence. As to this bill of exceptions, the court appends the following: " I, A. J. Hood, do hereby append, as a part and parcel of this bill of exceptions, this statement, viz.: On the trial, previous to offering to read said cotton-receipts, the State had handed said receipts to witnesses on the stand, — among others, W. Jeffries, — who by their evidence explained said receipts, showing, among other things, that the words ' First National Bank ' meant, and was intended to mean, ' First National Bank of Fort Worth.' " We are of opinion that this explanation removed the objection on the ground of a variance between the allegation and the proofs, and was admissible testimony to explain an apparent ambiguity in the face of the receipts. "As it is a leading rule, in regard to written instruments, that they are to be interpreted according to their subject-matter, it is obvious that parol or verbal testimony must be resorted to in order to ascertain the *nature and qualities of the subject* to which the instrument refers. Evidence which is calculated to explain the subject of an instrument is essentially different in its

character from verbal communications respecting it.   Whatever, therefore, indicates the nature of the subject, is a just medium of interpretation of the language and meaning of the parties in relation to it, and is also a just foundation for giving the instrument an interpretation, when considered relatively, different from that which it would receive if considered in the abstract," etc.    1 Greenl. on Ev., sect. 286. But authorities are not wanting to show that the testimony given relative to the meaning of the receipts went to explain and not to contradict the writing, and was legitimate testimony and destroyed the seeming variance.

The matter set out in the third bill of exceptions is unimportant at this stage of the proceeding, as it could not have influenced the verdict.   The fourth bill of exceptions sets out that a witness for the State was asked, on the part of the prosecution, if he knew of any sale of cotton made by the defendant to one Potter about the time the defendant left; which was objected to on the ground that the witness should be confined to the twenty bales mentioned in the indictment, and because the witness had previously stated that he did not know that the identical twenty bales charged in the indictment were included in any sale made to Potter. The bill of exceptions does not set out what the testimony was, so as to enable us to determine its importance.

The next bill of exceptions states a matter of some importance.   The cashier of the bank was asked by the State what contract, if any, the said bank had with defendant in regard to the indorsements on cotton-receipts shown the witness; when the defendant's counsel objected, unless the witness could testify from his own knowledge concerning the facts of said indorsements.   Thereupon, it appearing to the satisfaction of the court, from previous statements of the witness, that he, witness, as an officer of the bank, had in person prepared and submitted to defendant before the making of the receipt the full form of said indorsement, and had come to an understanding in person with the de-

fendant, the court overruled the objection, and the witness testified that between the said bank and defendant, in advance, it was fully agreed that said indorsements should be by defendant placed on all the cotton-receipts to be taken up by said bank, when the cotton was stored in defendant's cotton-yard; to which the defendant excepted.

The testimony abundantly shows the matter of the indorsement on the cotton-receipts, to the effect that the cotton covered by them was to be held by the defendant subject to the order of the bank, on return of the receipts, and that this was well understood by and between the bank officials and the defendant at the time and before the cotton charged to have been embezzled went into the defendant's possession.    What the contract was, was a proper subject of inquiry, and this witness showed he was competent to testify concerning it; and in this we see no error.

Other bills of exceptions were taken to the admission of testimony going to show that other persons had taken cotton away from defendant's cotton-yard.    It seems that this testimony was admitted rather in the prosecution of an inquiry as to where the cotton of the bank had gone to than for any other purpose, and perhaps to show that defendant had disposed of it.    The proof, it seems, does not show that any of those parties obtained any of the cotton for which the bank held the defendant's receipts, and to one of the bills of exceptions the judge appends this statement: "The court at the time expressly instructed the jury that this evidence, and all evidence of the kind, was only to be by the jury considered in connection with statements of other witnesses relative to the number of bales actually on the cotton-yard of defendant at the time spoken of as the 'break-up' by the witnesses."

It is in proof that at a certain named time the defendant unceremoniously left Fort Worth, leaving in his cotton-yard a quantity of cotton belonging to different persons, and there was a rush and much excitement over the affair, and

it is to this feature the witnesses are understood to refer in speaking of the "break-up;" but it seems not to have been shown that in the scramble over the cotton left on the yard any witness testified who received the missing cotton claimed by the bank, and, except a few bales found in the yard, the balance was not accounted for by the testimony.

The judge appends to another bill of exceptions the following: "The State, on the trial of this cause, was not allowed in a single instance to prove against the defendant other acts of embezzlement, the court ruling such proof not allowable. But the evidence drawn out by defendant's counsel went to show that after defendant left Fort Worth there was at one time on defendant's cotton-yard one hundred and fifty or one hundred and eighty bales of cotton, and the State offered evidence to show who claimed and got that cotton, and was allowed by the court, over objections of defendant, to introduce evidence as to whose cotton that one hundred and fifty or one hundred and eighty bales was. But on the trial for embezzlement charged, no other acts of embezzlement were allowed by the court to be proven against defendant." In these bills of exceptions, with the explanation given by the judge, the seeming objection vanishes, and it does not appear that any material error was committed in the admission of testimony under all the circumstances surrounding the trial.

On the subject of the special charges refused by the court, we are of opinion that the general charge presented to the jury the law on the subject to the extent the testimony warranted, and that the court did not commit any material error in refusing the charge asked by the defendant's counsel. It would be unprofitable consumption of time to undertake to follow and discuss in their order all the objections urged in the motion for a new trial and in the assignment of errors, as well as in the able brief and arguments of appellant's counsel against the charge of the court as to the law of the case, as made by the record before us.

One portion of the charge, however, seems to require more than a passing notice ; this seems to be set out in a separate paragraph, as follows : "And again, on the trial of any criminal action, when the facts have been proved which constitute the offence, it devolves upon the accused to establish the facts and circumstances on which he relies to excuse or justify the prohibited act or omission." This charge may not be objectionable, in view of the seeming attempt to prove that the cotton of the bank was on the yard of the defendant at the time he is shown to have left Fort Worth. But whilst this may be law in every case, we cannot conclude that it is an appropriate instruction to give to the jury in any and every case ; and whilst the charge was harmless in the present case, inasmuch as we do not see how the jury could have been misled by it, in view of the testimony and the preceding and succeeding portions of the charge, we deem it unnecessary. The legal principle enunciated would be inapplicable as a charge in an ordinary case where a defendant has pleaded not guilty. In such a case the general rule is that the burden of proof does not shift from the State to the defendant, and generally it would be error to so charge. This charge was not excepted to.

It is further objected to the charge that it assumes as law that embezzlement can be committed by one who has but a qualified and not an absolute right to the ownership of the property charged to have been embezzled. The offence is so near akin to larceny that it must be held that the same kind of ownership which would support an indictment for the one would support an indictment for the other. A qualified ownership with the right of control and possession would, it seems, support either. It is urged on the part of the appellant that the bank cannot, under the law, own personal property, or take a mortgage or other lien upon such property, and therefore cannot hold the cotton in question as a pledge or surety for the payment of money advanced on the faith of it. We are not aware of any authority

which goes to the extent of permitting one charged with embezzlement of property so situated, or theft of property, or any other kind of fraudulent and criminal appropriation or disposition of it, to raise the question of *ultra vires*. To our minds, the Penal Code of Texas makes no material difference in the protection afforded to the property and property rights of corporations and those of individuals, and by it all who violate its provisions, when prosecuted criminally before the judicial tribunals of the State, must be treated and judged alike. Whilst we have not attempted in this opinion to discuss all the interesting questions presented in argument, yet they have had all the consideration their importance and the earnestness and zeal with which they have been presented required at our hands ; and we are constrained to say that we have not found such material error as would authorize the reversal of the judgment of the District Court.

The material questions of fact on which the guilt of the accused depended seem to have been submitted to the jury under full and appropriate instructions, and we cannot say that the verdict is wanting in a sufficiency of evidence to support it. The judgment is affirmed.

*Affirmed.*

[After the delivery of the foregoing opinion affirming the judgment, and within a few days of the conclusion of the term, a motion for a rehearing was filed by the counsel for the appellant, and was supported by a forcible argument upon the controlling features of the case. Before the adjournment for the term, the motion was considered and overruled, with the announcement that the pressure of business had precluded the preparation of a written opinion, but, if practicable, one would be delivered at the ensuing Galveston term. Accordingly, at an early day of the Galveston term, 1880, the following opinion on the motion for a rehearing was rendered. — Reporters.]

CLARK, J. The several points relied on by the appellant, in his motion for rehearing, may be briefly stated as follows :

1. A portion of the evidence having tended to show that appellant had authority to sell the cotton alleged to have been embezzled, if he did in fact sell the cotton he could not be held guilty of embezzlement of the particular property as charged, and his instruction requested to that effect should have been given ; and the court erred in refusing it, and in instructing the jury that they should acquit in case he sold the cotton without any fraudulent intent.

2. The court erred in admitting, over the objections of the defendant, testimony tending to show other acts of embezzlement ; and further, in failing to limit the effect of such testimony after it was admitted.

3. The evidence shows that the defendant was a mere mandatary and not a bailee for hire, as alleged.

4. The evidence fails to show that the property was embezzled, and the charge of the court devolved upon the defendant the necessity of showing that it was not embezzled.

5. The evidence shows a fraudulent disposition of mortgaged property, and not embezzlement.

Many, if not most of the refinements incident to the law of embezzlement under both the English and American statutes have been modified by later legislation, and the tendency of the decisions at this day is to assimilate that offence to larceny, in accordance with the plain purpose of the law-making power in its first conception. The necessity which first gave rise to its enactment was a defect in the law of larceny, which failed to provide any criminal remedy for breaches of various trusts incident to the multiplied affairs of business, and to provide a punishment for fraudulent breaches of trust on the part of agents, servants, clerks, trustees, bailees, and other persons occupying a fiduciary relation, which at common law did not exist. All authorities coincide that the offence is akin to larceny, and

belongs to that family, and our statutes have always fixed
its punishment the same as larceny.    In a recent prosecu-
tion in England, under the statute 24 & 25 Vict., c. 96,
sect. 68, it was contended for the prisoner, upon the author-
ity of *Rex* v. *Hassall*, 1 Leigh & C. 58, that he could not
be convicted, because it was clear the property was never to
be returned to the owner, who had intrusted it to the pris-
oner, and who was therefore not a bailee.    But Pollock, C.
B., held otherwise in the following terse opinion, which we
copy entire :  "We are all of opinion that this conviction must
be affirmed.    It seems to me that the question is only like
what I said it was on Saturday last, viz., whether stealing is
stealing."    And Martin, B., remarked, in addition, "Com-
mon sense is beginning to prevail."    See 14 Week. Rep.
679.    And in a subsequent case in Ohio, involving many of
the distinctions set up in this case, the court said : " There
is no more reason why courts should allow themselves to be
misled by mere names and shadows in the administration of
justice in criminal than in civil cases."    *Calkins* v. *The
State*, 18 Ohio St. 371.    And such is the settled rule en-
joined by the Code.    Pasc. Dig., art. 1611.

1. Addressing ourselves to the points presented, we are of
opinion that notwithstanding the appellant may have had
authority to make a sale of the cotton alleged to have been
embezzled, yet if he sold the same with the formed inten-
tion to defraud the owner, and to convert it to his own use
and benefit, he is as much guilty of embezzlement of the
cotton as if he had no authority to make such sale.    What
is embezzlement?    A fraudulent appropriation of the prop-
erty of another, by a person to whom it has been intrusted.
There is no settled mode by which this appropriation must
take place, and it may occur in any one of the numberless
methods which may suggest itself to the particular indi-
vidual.    The mode of embezzlement is simply matter of
evidence, and not pleading ; and the appellant in this case
was charged in the usual form, that he " did embezzle,

fraudulently misapply, and convert to his own use " the particular property described. If he sold it with the honest purpose of delivering the proceeds to the owner, and after such sale conceived the fraudulent intention, he would not be guilty of embezzlement of the cotton at least. But if the sale was simply a means to effectuate his fraudulent purpose to convert the property to his own use, — in other words, to steal it, — it is as much an act of conversion as if he had shipped it clandestinely to a foreign port, and there disposed of it. This distinction is not unsupported by authority, and we are referred to none of a contrary effect.

In *United States* v. *Sander*, 6 McLean, 598, the defendant was indicted in two counts, for opening a letter of another and with embezzlement of the letter, and set up in defence an agency. The court instructed the jury to determine the fact of agency, and if they found that the defendant received the letter without any criminal purpose at the time, they should acquit; but if the letter was obtained from the post-office with criminal intent, it was larceny, although the defendant may have had the previous authority of the person to take her letters from the office. See also Archb. Cr. Pr. & Pl. (6th ed.) 460–463, note.

It is urged with much ability and earnestness that this view obliterates the fundamental doctrine in criminal jurisprudence, that, before there is crime, an unlawful act must unite with the unlawful intent; and we are referred to Mr. Bishop in support of the position. That such is the general doctrine no one can question; but it has its exceptions, like almost every other general rule. The same author says: "When a particular thing, of a nature to be embezzled, has come into the hands of the servant, he is in reason to be held guilty of embezzling the thing, in all circumstances which show a malicious intent to deprive the master of it. Suppose, for instance, he has the right to mix it with his own property, and does mix it, intending at the same time to embezzle what he thus mixes, why let him escape on the

ground that his act itself was alone no violation of duty, but only his act when coupled with his intent? Many criminal acts are criminal only because of the intent with which they are done.'' 2 Bishop's Cr. Proc., sect. 369. The charge of the court presented with accuracy the exact distinction applicable to the facts in proof, and the instruction requested and refused was not the law of the case.

2. The evidence relating to other acts of embezzlement, which was objected to by appellant, was introduced to meet an issue raised by the defence, to wit, that the cotton alleged to have been embezzled was in fact left upon appellant's cotton-yard at the time he absconded, and that the necessary and reasonable presumption was that other parties holding storage-receipts for cotton in that yard had gone upon the yard and taken their own cotton, and this particular cotton as well. To anticipate or rebut this presumption, the State introduced certain parties who held these receipts, one of whom testified that he held receipts for fifty-one bales and got only sixteen bales, which were all that was left upon the yard; and the other testified that he held receipts for eleven bales and got none. This evidence was restricted by the court below to the point above indicated, but it was admissible without such restriction. *Rex* v. *Richardson*, 2 Fost. & Fin. 343; Roscoe's Cr. Ev. 86, 88, 94; 2 Russ. on Cr. 777; 1 Greenl. on Ev., sect. 53. If it were necessary to a determination of the question, which is not the case, it might be assumed, from one of the theories of the defence, that these other fraudulent acts were contemporaneous with and parts and parcels of the identical transaction for which the defendant was on trial. The rule applicable to this case is found in *The Commonwealth* v. *Tuckerman*, 10 Gray, 199, and not in *The Commonwealth* v. *Shepard*, 1 Allen, 575.

3. For a proper disposition of the third ground of the motion, it suffices to say that the appellant was estopped by his receipts from claiming that he was not a bailee for hire.

*Ex parte Hedley*, 31 Cal. 113; 2 Bishop's Cr. Law, sect. 367. Apart from this, there was evidence tending to show a special contract between the appellant and the bank that the former should receive a certain sum for storage of each bale, which constituted a charge upon the cotton, payable when the cotton was delivered. The jury were authorized to believe this, and the State was not confined to showing that the storage-fee was the exact sum alleged, the real issue being whether the appellant was a bailee for hire or not. *Henry Smith* v. *The State, ante,* p. 382. This the record conclusively shows.

4. The offence of embezzlement is invested with no such favor or peculiarities under the law as to necessitate its proof by express and positive testimony. In prosecutions for this offence, it is only necessary that the evidence should satisfy the minds of the jury, beyond a reasonable doubt, that the defendant is guilty of the act charged. This may be shown in any of the modes designated in the general law of evidence. The facts essential to be established in this case were: 1. That the First National Bank of Fort Worth was the owner of the cotton; 2. That it deposited the cotton with defendant as a bailee for hire, and that the defendant received it as such, charged with the duty of holding it for the owner, and subject to its order; 3. That, pending the existence of this relation, he fraudulently appropriated it to his own use. We are of opinion the evidence establishes these propositions beyond a reasonable doubt. There can be no reasonable question as to the two first named, and the circumstances in evidence established with unerring certainty the last. It was not necessary for the State to prove a demand for the cotton, because the defendant absconded, and, from the evidence, left no authorized agent upon whom any demand could have been made. If this were not so, a demand was not necessary in any event. *The Commonwealth* v. *Tuckerman*, 10 Gray, 173. The fraudulent appropriation is to be inferred from facts; and flight, in-

solvency, concealment, or evasion, form strong circumstantial proofs of guilt. Whart. Cr. Law (7th ed.), sect. 1927; *The State* v. *Leonard*, 6 Coldw. 307; *Rex* v. *Williams*, 7 Car. & P. 388 (32 Eng. Com. Law, 644).

Nor do we deem the charge of the court subject to the criticism made by counsel. The two statutes, one in the Code of Criminal Procedure, and the other in the Penal Code, when taken and construed together, are not in conflict with each other nor with any decision in our reports. A defendant in a criminal case is presumed to be innocent until his guilt is established by legal evidence; and in case of reasonable doubt as to his guilt, he is entitled to be acquitted (Pasc. Dig., art. 3105); but on the trial of any criminal action, when the facts have been proved which constitute the offence, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission. Pasc. Dig., art. 1655. In other words, the law starts the trial with the presumption of innocence in favor of the prisoner, which continues until a verdict of guilty; but the State is not called upon to do more than to prove its own case. It is only required to prove the facts which constitute the offence, and rest its case. If there be no further evidence, the case goes to the jury with the evidence for the State, which must be tested by them, on their retirement, by legal rules as to its sufficiency, including the rule as to reasonable doubt. If evidence be introduced by the defendant tending to establish facts or circumstances upon which he may rely to excuse or justify the prohibited act or omission, then the question of his guilt is to be decided on the whole evidence, without pausing to inquire whether it was introduced by him or by the State. The proposition embodied in art. 1655 was frequently enunciated as law by our highest court before the adoption of the Codes. *Henderson* v. *The State*, 12 Texas, 525; *Belverman* v. *The State*, 16 Texas, 130; and in *Hall* v. *The State*, decided at Galveston in 1875, but never re-

ported. These cases, together with the statute, were reviewed in connection with the decisions of other States, and recognized as substantially the law. This case of Hall is the leading case upon which many later decisions have been based, and it is unfortunate for the profession, and the proper administration of criminal law, that its publication has been so long delayed. The charge objected to in that case is totally dissimilar to the one at bar. The defendant was indicted for assault with intent to murder, and the court instructed the jury that " the burden of proof is on the defendant to show the facts and circumstances which would excuse or justify the shooting; that, the shooting being established, the burden of proof is upon the defendant to show the sudden passion or adequate cause which would reduce the offence below the grade of an assault with intent to murder." This portion of the charge was objected to because it relieved the State from the necessity of proving that the shooting was unlawful, and done with malice aforethought express or implied, and threw upon the defendant the burden of proving his innocence, instead of the burden of meeting a *primâ facie* case of guilt as charged. The court held that the charge, as a whole, did not infract the law, though perhaps the jury may have been misled by the context. But they expressly declined to rest the decision upon this ground, and the judgment was reversed for another error. And in the following quotation they recognize the principle announced in the charge and complained of in this case: " The principle in all these cases [numerous cases in this and other States] is, that although the defendant must establish the facts on which he relies to excuse or justify his acts, when such excuse or justification does not arise out of the evidence against him, yet the burden of proof is not on him in the sense it is understood to rest on a defendant in a civil suit." Subsequent decisions have in no manner qualified this case. *Perry* v. *The*

*State*, 44 Texas, 473 ; *Brown* v. *The State*, 4 Texas Ct. App. 275 ; *Ake* v. *The State*, 6 Texas Ct. App. 398.

Without undertaking to enumerate cases wherein such an instruction might be objectionable, we are of opinion that this case not only justified but would seem to have required it, as the whereabouts and disposition of the cotton were wholly within the knowledge of appellant ; and after the establishment of the *primá facie* case of guilt as above indicated, it peculiarly devolved upon him to establish his excuse or justification.

5. The distinction attempted to be drawn in the fifth ground of the motion, to wit, that the defendant, if guilty at all, was not guilty of embezzlement, has been often attempted and has as often failed. *Calkins* v. *The State*, 18 Ohio St. 366 ; *Hutchinson* v. *The Commonwealth*, 82 Pa. St. 472. The latter of these cases also decides that the title to the cotton passed by delivery of the receipts. But authorities are hardly necessary upon that point.

After a patient hearing and consideration of the points presented, we find no reason for disturbing the judgment, and the motion for rehearing is overruled.

*Rehearing refused.*